# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL ACTION NO. 1:21-CV-322-KDB

**TAMMY BLACK,**

    **Plaintiff,**

v.

**KILOLO KIJAKAZI, Acting Commissioner of Social Security,**

    **Defendant.**

<u>**ORDER**</u>

    **THIS MATTER** is before the Court on Plaintiff Tammy Black's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No. 13). Ms. Black, through counsel, seeks judicial review of an unfavorable administrative decision denying her application for disability insurance benefits and supplemental security income under the Social Security Act.

    Having reviewed and considered the parties' written arguments, the administrative record, and applicable authority, the Court finds that Defendant's decision to deny Plaintiff Social Security benefits is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment will be **DENIED**; Defendant's Motion for Summary Judgment will be **GRANTED**; and the Commissioner's decision **AFFIRMED**.

## I. BACKGROUND

    On June 18, 2019, Plaintiff applied for benefits under Titles II and XVI of the Social Security Act, alleging that she had been disabled since July 1, 2011 (*See* Tr. 16, 230-31). Plaintiff's application was denied both on its first review and upon reconsideration. (Tr. 16, 62-66, 68-88,

1

92-100, 102-08). After conducting a hearing on November 10, 2020, the Administrative Law Judge ("ALJ") denied Plaintiff's application in a decision dated January 12, 2021. (Tr. 5-9). After applying the five-step sequential evaluation process, the ALJ found that Plaintiff has not been under a disability within the meaning of the Social Security Act during the relevant period.

The Appeals Council denied Plaintiff's request for review and thus the ALJ's decision now stands as the final decision. (Tr. 5). The Appeals Council added to the RFC that Plaintiff requires a cane to ambulate to and from a workstation. *Id.* Ms. Black has timely requested judicial review under 42 U.S.C § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ followed the required five-step sequential evaluation process established by the Social Security Administration to determine whether Plaintiff was disabled under the law during the relevant period. At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity during the following periods: November 2011 to January 2013 (20 CFR 404.1520(b), 404.1571 et seq., 416.920(b) and 416.971 et seq.), and at step two that she had the following medically determinable severe impairments: Right ankle injury status post surgeries (20 CFR 416.920(c)). (Tr. 18-19). At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, App. 1 (20 CFR 416.920(d), 416.925 and 416.926). (Tr. 20). The ALJ then determined that Plaintiff had the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a range of sedentary work as defined in 20 CFR 416.967(a). More specifically, the claimant can no more than occasionally lift and carry ten pounds and can no more than frequently lift and carry less than ten pounds. She can stand and/or walk for no more than two hours and sit for no more than six hours in an eight-hour workday with normal breaks and rest

2

periods. She can push, pull, and operate foot controls no more than occasionally with the right lower extremity. She can no more than occasionally use ramps and stairs. She can no more than occasionally balance, stoop, kneel, or crouch. She can never climb ladders, ropes, or scaffolds. She must avoid exposure to hazardous machinery and unprotected heights.

At step four, the ALJ found that Plaintiff could not perform her past relevant work as a certified nursing assistant, nursery school attendant, or service parts driver. (Tr. 24). At step five, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff – given her age (49), high school education, work experience, and RFC—could perform, including as a food checker (DOT 211.482-014; 40,000 to 45,000 jobs nationally); addressing clerk (DOT 209.587-010; 10,000 to 12,000 jobs nationally); and printed circuit board screener (DOT 726.684-110; 8,000 to 10,000 jobs nationally). (Tr. 25). Thus, the ALJ found that Plaintiff was not disabled under the Social Security Act from August 28, 2017, through the date of her decision.

## III. DISCUSSION

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Bird v. Comm'r of SSA*, 699 F.3d 337, 340 (4th Cir. 2012); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In *Smith v.*

*Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986), *quoting Richardson*, 402 U.S. at 401, the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*See also Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not the district court's place to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Smith*, 795 F.2d at 345; *Blalock*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982). Yet in undertaking this review, "we do not reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

Plaintiff raises two challenges to the ALJ's decision: (1) the ALJ erred by failing to either include an accommodation for right lower extremity ("RLE") elevation in the RFC or explain why one was not necessary and (2) the ALJ's appointment violates the Appointments Clause.

The Court finds that the ALJ properly assessed Plaintiff's need for RLE elevation in the RFC and sufficiently explained why such a restriction was not necessary. Plaintiff argues that because her medical care providers recommended her to elevate her RLE and because she testified that doing so relieves pain, the ALJ should have included an accommodation for RLE elevation in the RFC. In support of her argument, Plaintiff cites two post-surgical instructions which direct "ice/elevation" as "discharge information." (Tr. 458, 478). Plaintiff also cites a treatment note that

was provided ten days after her right revision talonavicular arthrodesis procedure, which recommended RLE elevation "as needed" to reduce swelling. (Tr. 381). The recommendations of Plaintiff's physicians suggest that RLE elevation was necessary for Plaintiff's post-surgery recovery, not as an ongoing medical need. Moreover, Plaintiff has not provided any recommendations from her physicians that she elevate her RLE since October 5, 2018.

Plaintiff additionally testified that elevating her RLE throughout the day reduces pain and swelling. Doc. No. 10 at 5-6. Plaintiff argues that based on this testimony, the ALJ should have included an accommodation for RLE elevation in the RFC. But a plaintiff's RFC is based on all of the relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1). Here, the ALJ properly considered Plaintiff's testimony only to the extent that it was consistent with medical evidence and other evidence of record. The ALJ explained that physical examination of Plaintiff's foot and imaging studies were inconsistent with Plaintiff's complaints of pain in her foot. (Tr. 22). Additionally, updated imaging of Plaintiff's right ankle in July 2019 identified her ankle joint replacement and "multi-tarsal fusion" with "no findings suggestive of nonunion or acute fracture." *Id*. The ALJ also found significant Plaintiff's ability to drive short distances and maintain independence with dressing, grooming, and other activities of daily living. *Id.* at 23.

Within her first argument, Plaintiff also contends that the ALJ did not explain why an accommodation for RLE elevation was not necessary. However, the ALJ noted that additional accommodations were not necessary because the record contained normal physical exam findings and the Plaintiff generally reported independent activities of daily living. (Tr. 22). Accordingly, the ALJ properly assessed Plaintiff's RFC and sufficiently explained why additional accommodations were not necessary.

As for Plaintiff's second argument, the Court finds that acting Commissioner Berryhill was validly serving under the Federal Vacancies Reform Act ("FVRA"). The FVRA prescribes that an acting official may serve "for no longer than 210 days beginning on the date the vacancy occurs; or ... once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate." 5 U.S.C. § 3346(a)(1)-(2). For vacancies existing during the first 60 days after a Presidential transition, the 210-day period runs from the later of 90 days after inauguration or 90 days after the vacancy. *Id.* § 3349a(b). If a first nomination does not result in a confirmation, an acting official may serve for another 210 days, *id.* § 3346(b)(1), and during a second nomination, *id.* § 3346(b)(2)(A). If the second nomination fails, then an acting official may serve for another 210 days. *Id.* § 3346(b)(2)(B).

Nancy Berryhill, then the Deputy Commissioner of Operations for SSA, was designated Acting Commissioner on January 21, 2017, and served until November 16, 2017, when her initial 210-day period for acting service expired. On April 17, 2018, President Trump nominated Andrew Saul to be the Commissioner of SSA. Upon submission of the nomination, Ms. Berryhill resumed her service as Acting Commissioner during the nomination's pendency and served until Mr. Saul was sworn in as Commissioner. On July 16, 2018, Acting Commissioner Berryhill ratified the appointment of all SSA ALJs and approved them as her own.

Other courts have considered this issue and have found that § 3346(a)(2) "contains a 'spring-back' provision that enabled Berryhill to resume her role as Acting Commissioner as of the date that Andrew Saul was nominated for Commissioner in April 2018." *Thomas S. v. Comm'r*, No. C21-05213-MAT, 2022 WL 268844, at *3 (W.D. Wash. Jan. 28, 2022); *see also Reuter v. Saul*, No. 19-CV-2053-LRR, 2020 WL 7222109, at *15 n.11 (N.D. Iowa May 29, 2020), *adopted*

*by*, 2020 WL 6161405, at *6 (N.D. Iowa Oct. 21, 2020); 23 Op. O.L.C. 60, 68 (Mar. 22, 1999); *Nw. Immigrant Rts. Proj. v. U.S. Citizenship & Immigr. Servs.*, 496 F. Supp. 3d 31, 57-58 (D.D.C. 2020); *but see Brian T.D. v. Kijakazi*, 2022 WL 179540, (D. Minn. Jan. 20, 2022). This Court agrees with this authority. Indeed, the plain language of 5 U.S.C. § 3346 allows for Ms. Berryhill to have resumed her role as Acting Commissioner on the date that Andrew Saul was nominated. Consequently, she had the necessary statutory authority to ratify the appointment of the ALJs in 2018 and thus Plaintiff's second argument fails.

As noted above, the ALJ is solely responsible for assessing a claimant's RFC, 20 C.F.R. §§ 404.1546(c) & 416.946(c). Again, the task for this Court is not to determine how it would rule on Plaintiff's claim for disability in the first instance, but only whether there is substantial evidence to support the ALJ's ruling. The substantial evidence standard assumes a zone of choice within which the ALJ can decide either for or against the claimant, without interference by the courts. A decision is not subject to reversal just because substantial evidence would have supported a contrary decision. *See Dunn v. Colvin*, 607 Fed. Appx. 264, 274 (4th Cir. 2015).

The Court has carefully reviewed the record, the authorities, and the parties' arguments. The ALJ applied the correct legal standards and her conclusion that Plaintiff was not disabled is supported by substantial evidence. Therefore, the ALJ's decision will be affirmed.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED:**

Plaintiff's Motion for Summary Judgment (Doc. No. 9) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 13) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

**SO ORDERED ADJUDGED AND DECREED.**

Signed: July 26, 2022

Kenneth D. Bell
United States District Judge